UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EMPLOYERS INSURANCE OF WAUSAU,<br><br>              Plaintiff,<br><br>   v.<br><br>CALIFORNIA WATER SERVICE CO.,<br><br>              Defendant. | Case No.: C- 06-3002   PVT<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY** |

**I.    INTRODUCTION**

This lawsuit involves the question of whether policies issued by Plaintiff Employers Insurance of Wausau ("Wausau") to Defendant California Water Service Co. ("Cal. Water") provide coverage for water contamination alleged in two underlying lawsuits that were filed in the Eastern District of California.[1] On August 14, 2007, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing on Wausau's Motion to Compel Production of Documents withheld by Cal. Water on claim of attorney client privilege. The issue before the court is whether Cal. Water waived the attorney client privilege and the work product immunity

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

for communications involving itself, its counsel in the underlying litigation, and its counsel in the current litigation. On August 15, 2007, the Court Ordered Supplemental Briefing on issues inadequately covered in the original briefs filed. Based on all of the papers filed, and the arguments of counsel at the hearing, the Court Denies Wausau's Motion to Compel Production of Documents.

## II. LEGAL STANDARDS

### A. Legal Standards

A federal court exercising diversity jurisdiction applies California law to issues relating to the attorney-client privilege and federal law governs disposition of issues relating to work product immunity. Fed. R. Evid. 501; *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co,* 163 F.R.D. 574, 577 (N. D. Cal. 1995).

Under California law,

> 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952. California defines waiver as follows:

> Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege.

Cal. Evid. Code § 912.

Additionally, California law guaranteed Cal. Water the right to independent counsel to be paid for by Wausau, if coverage exists for the underlying litigation. The law provides:

> When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning

> the action *except privileged materials relevant to coverage disputes*, and timely to inform and consult with the insurer on all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

Cal. Civ. Code § 2860(d).

The attorney-client privilege may be impliedly waived by placing the contents of the privileged communications at issue in the case. However, "the party opposing the privilege bears the burden of showing that there has been an implied waiver." *2,022 Ranch, L.L.C. v. Superior Court*, 113 Cal. App.4th 1377, 1395 (2003), *citing* Evid. Code, § 917. And waiver can only be shown by "demonstrating that the client has put the otherwise privileged communication directly at issue" *Id.* Finally, the scope of an implied waiver must be "narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver." *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal.App.3d 1047, 1052 (1987).

In order to resist discovery based on the work product immunity, a party must show that the discovery sought is: 1) a document or tangible thing; 2) that was prepared in anticipation of litigation; 3) by or for a party, or by or for its representative. *Admiral Ins. Co. v. United States District Court*, 881 F. 2d 1486, 1494 (9th Cir. 1989). The work product immunity "is aimed at protecting the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery." *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926 (N.D. Cal. 1976). The work product immunity is also intended to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989).

### III. DISCUSSION

In the legal briefs filed, Wausau argued that Cal. Water had waived the attorney client privilege and work product immunity by placing the contents of the communications at issue. Wausau, however, originally argued only that the issues discussed in the communication were relevant and did not support the argument that the contents of the communications were directly at issue. (Mot. at 10:18-22).

At the hearing, Wausau appeared to argue that communications between John Podesta (counsel in this insurance coverage case) and Patrick Riddle and Paul Sheldon (counsel in the underlying environmental suits) as to when the contamination occurred are relevant and that attorney Podesta's opinion is relevant as an admission by Cal. Water. (Hearing Tr. at 19-22). Thus, Wausau argued, the substance of the communications is directly at issue in this lawsuit. Based on this new argument, the Court ordered supplemental briefing to allow Wausau to present legal authority for the novel proposition that an attorney's assessment of legal issues can be used as a party admission and to support the argument that the contents of the communications were directly at issue. Wausau was specifically directed to address the following California case law:

> The in issue doctrine creates an implied waiver of the privilege only when the client tenders an issue involving the substance or content of a protected communication, not where the privileged communication simply represents one of several forms of indirect evidence in a particular case. ( Mitchell v. Superior Court (1984) 37 Cal.3d 591, 606, 208 Cal.Rptr. 886, 691 P.2d 642.) For this reason, the doctrine has no application in a coverage action between an insured and its carrier where the issues turn on the underlying facts and the insured is not relying on the advice of counsel for any purpose.

*Rockwell Int'l. Corp. v. Superior Court*, 26 Cal.App.4th 1255, 1268(1994).

### A. Waiver By Placing Contents At Issue

Wausau argues that Cal. Water created a new theory of liability against itself, for the sole purpose of triggering insurance coverage. Wausau asserts that the California Department of Toxic Substances Control ("DTSC") only claimed that Cal. Water was responsible for failing to properly decommission certain contaminated wells, allowing those wells to act as a conduit for PCE contaminated water to flow from shallow and intermediate aquifers into the deep aquifer (the "Vertical Theory of Liability"). According to Wausau, this cross-contamination conduct all occurred after 1984 at a time when the insurance policies precluded coverage. The argument continues that Cal Water, solely in order to create coverage, introduced a new theory of liability: that it was liable, starting before 1984, for increasing the PCE plume by pumping water (the "Horizontal Contamination Theory").

Wausau claims that the only evidence that Cal. Water has in support of its contention is a

declaration from Paul Sheldon, counsel in the underlying litigation.  Mr. Sheldon stated: "I understood from reviewing the pleadings and discussing the case with counsel for DTSC that the following were included in the claims presented against Cal Water as of December 2005."  Mr. Sheldon then listed both the Vertical and Horizontal theories of liability.  (Sheldon Decl. iso Cal Water's Mtn for Summary Judgment, ¶ 13.).  Accordingly, Wausau argues that Cal. Water's reliance upon its counsel's understanding of the theories of liability puts the contents of every document in which Mr. Sheldon discusses the topic of insurance coverage "directly at issue."

As Cal. Water argues, it has not relied upon the advice of its attorneys for any purpose.  Instead, Cal. Water cites Mr. Sheldon as a percipient witness to the fact that the DTSC claimed that Cal. Water was liable for causing horizontal migration.  Whether Cal. Water is or was liable under CERCLA will be proven by reference to the statute and the scientific reports.  Thus, even if counsel's opinion is relevant, it is nothing more than indirect evidence.  Additionally, Cal. Water has produced other evidence of Mr. Sheldon's belief that the DTSC was seeking to impose liability based on Horizontal Liability.  Cal. Water produced a letter dated April 25, 2002 from Mr. Sheldon to Mr. Taylor, Vice President of Operation of Cal. Water, in which he references a conversation with Jim Tjosvold of the DTSC and that Mr. Tjosvold had asserted potential liability because "Cal Water has 'pumped from a well that increases the rate of flow [sic] contaminated groundwater'" (Hutchinson Decl. Exh. A.)  Similarly, two letters written by Mr. Sheldon to Tim Sullivan of the Attorney General's office also express concern of the DTSC's original statement that horizontal movement of water could lead to liability and attempts to structure a settlement to exclude any such liability.  (*Id.*, Exhs. B and C.) [2]

Moreover, Cal. Water has not relied upon "the substance or content of a protected communication."  Instead, it has relied upon the contents of pleadings and a discussion between Mr. Sheldon and *opposing* counsel.  Thus, the contents of a privileged communication were not

---

[2]Wausau originally paid for the defense, but ceased after a 1998 California case holding that administrative claims did not trigger coverage.  In 2002, Cal. Water was trying to settle administrative claims for damages and no lawsuit had yet been filed.  Wausau resumed providing the defense in 2003 after Cal. Water was named as a defendant in the underlying lawsuits.

relied upon by Cal. Water and Cal. Water has not put the substance of any privileged communication directly at issue.

### B. Waiver by Selective Disclosure

Wausau next argues that Cal Water has waived the attorney client privilege by selective disclosure of documents relating to coverage issues. The documents that Wausau assets as selective disclosures of insurance coverage information, however, are simply not privileged. First, Wausau cites to handwritten notes stating ""Golden Eagle Coverage?" (Smith Decl. Exh. E.) This sketchy reference to whether coverage is available or not does not amount to an unfair selective disclosure.

The next example is a memo about various litigation and settlement strategies. (Smith Decl. Exh. F.) The memo does evaluate various strategies and whether insurance would be available, for example winning litigation would yield insurance coverage and settling would not. However, these evaluations do not go to the heart of the coverage question. Instead, they are more a summary of black letter law and not an unfair selective disclosure.

On July 18, Cal . Water made a supplemental production of privilege log numbers 3, 7, and 9-13. On July 18, Cal . Water made a second supplemental production of privilege log numbers 3, 7, and 9-13. Wausau claims that Cal. Water's willingness to turn over some of the documents previously withheld is proof of selective disclosure. Wausau, however, does not assert any way in which Cal. Water received any tactical advantage from this allegedly selective disclosure. The Court's review of the documents produced reveals no tactical advantage; instead Cal Water has merely produced those documents that do not substantively address insurance coverage issues. For example, log number 7 merely asks attorney Sheldon to review a document, keeping in mind whether future actions might effect Cal Water's right to coverage. The answer to that question was not produced and the question itself is not an unfair selective disclosure. Number 12 merely mentions that a stay of litigation will preserve insurance defense dollars. Similarly, number 13 merely mentions that the attorneys need copies of the insurance policies. The other documents either do not obviously mention insurance coverage or contain similar, innocuous references to the insurance company. Accordingly, there was no selective

waiver and the Court will not punish Cal Water for cooperating in the discovery process.[3]

### C. Attorney Opinion as Admission

At the hearing, the Court asked Wausau if Mr. Podesta's opinion as to when the contamination occurred was relevant and Wausau responded: "It's certainly relevant. He's Cal Water, and in a case in which we are going against Cal Water in this courtroom for insurance coverage, he is Cal Water and his admissions are going to be as damning from [sic] as anyone from Cal Water themselves." (Hearing Tr. at 21-22). The Court specifically required Wausau to provide authority for its assertion that statements made by Cal. Water's counsel could be considered admissions by Cal. Water. In response, Wausau merely asserts that Cal. Water has placed Mr. Sheldon's understanding at issue and that an *in camera* inspection is warranted because some of the withheld documents may be shielding statements concerning facts from discovery. (Supp. Br. at 6-7).

Thus, Wausau has provided no legal authority for the astonishing proposition that an attorney's private assessment of liability to his client can be an admission of the client. Accordingly, the Court finds no basis for finding waiver of the attorney client privilege or work product immunity based on attorney statements being discoverable as admissions of their clients.

### D. Work Product Immunity

Wausau argued that the work product immunity does not apply to any documents created by underlying counsel because they were not created in anticipation of this litigation. "Litigation need not have already commenced in order for the work product doctrine to be operative, however, there must be more than a remote possibility of litigation." *Conner Peripherals, Inc. v. Western Digital Corp.*, 1993 WL 726815 at *4 (N.D. Cal. June 8, 1993). The privilege applies

---

[3] Moreover, even if any waiver had been effected, it would be limited to the documents produced. California law jealously guards the attorney-client privilege and interprets all waivers narrowly. *See, e.g. Owens v. Palos Verdes Monaco*, 142 Cal. App. 3d 855, 870-71,(1983) (disapproved of on other grounds by, Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (1994) (" a waiver under Evidence Code section 912 relates to the particular communication which has been revealed and not to all communications concerning the subject matter of the lawsuit." ); *Lohman v. Superior Court*, 81 Cal.App.3d 90, 94 (1978); *Sony Computer Entertainment America, Inc. v. Great American Ins. Co.,* 229 F.R.D. 632, 635 (N.D. Cal. 2005) (limiting waiver under California law to single email and any follow -up emails.)

"if the prospect of litigation is identifiable because of specific claims that have already arisen." *Id.* The test is whether "the documents can fairly be said to have been prepared or obtained because of the prospect of the litigation." *Id.*

In this case, the instant coverage litigation was more than a "remote possibility." Wausau only tendered defense of the underlying litigation pursuant to a reservation of rights. Accordingly, the specific claim that the damage at issue in the underlying lawsuits was not covered by the relevant insurance policies and that Wausau might seek to reclaim defense costs had already arisen prior to issuance of these documents. Finally, underlying counsel only prepared documents relating to insurance coverage because the possibility had already arisen that coverage would be denied by Wausau.

Wausau next argues that the work product immunity is only a qualified protection and that they have met the showing to overcome the immunity. Federal Rule of Civil Procedure 26(b)(3), provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3); *see also McKenzie v. McCormick*, 27 F.3d 1415, 1420 (9th Cir. 1994) (A "far greater showing of necessity and unavailability by other means [is] required for 'opinion' work product.")

Wausau baldly asserts that the "good cause" requirement has been met "for the reasons described above". (Mot. at 12.) Wausau, however, merely argued in its motion that the issues discussed in the documents sought were central to the litigation. Thus, Wausau has not established a "substantial need" for the documents in question.

//

//

**IV.     CONCLUSION**

For the foregoing reasons, It Is Hereby Ordered that Wausau's Motion to Compel Production of Documents is DENIED.

IT IS SO ORDERED.

Dated: October 9, 2007

*Patricia V. Trumbull*
_____
PATRICIA V. TRUMBULL
United States Magistrate Judge